DRUSILLA WHITLOW, Appellee, v. SOVEREIGN CAMP OF THE WOOD-
MEN OF THE WORLD, Appellant.

INSURANCE: Life Insurance—Failure to Pay Dues—Automatic For-
feiture. A provision in a life insurance policy·to the definite effect
that a failure to pay promptly the dues and assessments at the
time specified shall work a complete forfeiture of the policy, is
*self-executing,* even though the reason for not making the payment is
· the insanity of the insured.

Headnote 1: 29 Cyc. pp. 179, 182; 32 C. J. pp. 1299, 1306.

*Appeal from Madison District Court.*—J. H. APPLEGATE, Judge.

FEBRUARY 17, 1925.

ACTION to recover on an insurance policy. From a judg-
ment on the verdict of a jury in favor of the plaintiff, defendant
appeals.—*Reversed.*

*Miller, Kelly, Shuttleworth & McManus* and *Wilkinson &
Wilkinson,* for appellant.

*J. A.* and *W. T. Guiher* and *J. E. Tidrick,* for appellee.

ALBERT, J.—On and prior to the 22d day of June, 1921, one
William A. Whitlow was the owner and holder of a policy of
insurance covering his life, in the defendant company, and
plaintiff herein was the beneficiary under the·terms of said cer-
tificate. On that date, the said Whitlow suffered a stroke of
paralysis, and died on the 21st of November following.
Plaintiff, on the 22d of September, 1922, brought an action
based on the certificate of insurance. Defendant answered in
three counts. In the first count, after admitting corporate
capacity, it admits that, on the 22d day of August, 1921, Whit-
low was a member in good standing, but says that, during said
month of August, he ceased to be a member of said defendant
society. In a second count, they plead that, in said month of
August, Whitlow made application for old-age disability bene-

fits, and surrendered and released the benefit certificate, for the sum of $278.74, which sum was paid to the said Whitlow, and he surrendered the benefit certificate, and withdrew and canceled his membership in said society, and acknowledged full and complete satisfaction and payment to him of all sums, claims, or demands then or thereafter arising under or by reason of his certificate of membership in said society. They further plead that said release covered Whitlow, his beneficiary, heirs, and assigns; and the company, therefore, denies liability. In a third count, they plead further that, under the by-laws of the society, every member who fails to pay the monthly installments of dues or assessments or any other payment required to be paid, on or before the last day of the month, stands suspended, and that during such suspension the beneficiary certificate is null and void; that Whitlow did not pay the monthly installment due for the months of September, October, and November, 1921; and that his membership became suspended, and the beneficiary certificate became null and void.

By way of reply, in four counts, the plaintiff says, replying to Count 1 of defendant's answer, that Whitlow was, in truth and in fact, a member of said society in good standing, at all times up to the time of his death. Answering Count 2, she denies that Whitlow made, executed, and delivered to defendant a release, and made application for disability benefits, but admits that, during the month of August, 1921, Whitlow attempted to apply for old-age benefits under said policy. All premiums are said to be paid in full to that date. She admits that defendant paid Whitlow the sum of $278.74, and that the company is now entitled to a credit on beneficiary certificate for said sum, with 6 per cent interest; but plaintiff alleges the truth to be that, at that time, and up to the time of his death, Whitlow was insane, and incapable of transacting any business whatever, and could not have realized or appreciated the effect of his acts, because of defective mental condition. Replying to Count 3, plaintiff admits that Whitlow did not pay the assessments due in September and October of 1921. In Count 4, they deny all the allegations in the answer not herein admitted to be true, or otherwise responded to.

By rejoinder, the defendant says, after denying all allega-

tions in plaintiff's reply relative to the alleged mental condition of the said Whitlow, that the plaintiff herein actively participated in the making of Whitlow's application for old-age disability, and the surrender and release of the beneficiary certificate signed by Whitlow on the 22d of August, 1921, and obtained from the defendant the sum of $278.74 paid to said Whitlow by the defendant on the surrender by Whitlow of his beneficiary certificate; that the plaintiff aided and assisted Whitlow in surrendering the certificate of membership, with full knowledge of the facts, treated said surrender of said certificate of membership as lawful and binding, and did not thereafter, during the lifetime of Whitlow, pay any installment or dues and assessments which would have been payable to the defendant if said membership had not been surrendered and canceled; that the plaintiff by her acts and conduct estopped herself from claiming that Whitlow was insane or incapable of transacting any business, and has estopped herself from claiming that the acts of Whitlow in surrendering his beneficiary certificate and obtaining the said sum in settlement thereof were not lawful and binding. It further alleges that Whitlow's membership in said society lapsed and ceased, and that he was not, at the time of his death, a member of said society.

Briefly stated, the facts in the case are shown to be that Whitlow held a beneficiary certificate in defendant company, bearing date of March 12, 1902. He made all payments of dues and assessments to the 22d of August, 1921. On the 22d day of June, 1921, he suffered a stroke of paralysis, and on the 22d of August, 1921, under the terms of his certificate, he made application for old-age disability benefits, as provided therein, and under the by-laws, rules, and regulations of the society. This application was sent to the company; and in return, the company paid him $278.74, which seems to be conceded to be the amount to which he was entitled, under the circumstances. The policy was turned over to the company; and from that time on, neither he nor anyone for him made any payments of monthly assessments or dues to the company.

The first question presented is the issue of insanity. If the deceased was not of unsound mind at the time this settlement was made with the company, there is nothing further to con-

sider in the case. There is a conflict in the testimony on the question, however; and, this being so, it was a question of fact for the jury; and, the jury having decided in favor of the plaintiff, the question is foreclosed, so far as this court is concerned.

A further brief statement of some of the pertinent facts will aid a further consideration of the questions involved.

It appears that one of the contentions of appellee is that the company realized the condition of this man, and took advantage of his physical and mental condition to overreach him, and to escape full liability on the certificate by paying him less than one fourth of the value thereof. This contention is wholly unwarranted; as the evidence in the case shows that it was a strictly good-faith transaction, and that the company knew nothing about the defective mental condition of the deceased, and in fact, that the negotiations for taking advantage of this provision for old-age benefits were instituted in the first instance by the deceased himself. What little evidence there is in the case quite fairly shows that the local officers of the defendant company urged the deceased not to take advantage of this benefit provision, but to allow his certificate to continue in force. This he refused to do, but insisted that settlement be made.

It is claimed that plaintiff herein, the beneficiary under said certificate, is estopped by her acts and conduct with relation to said settlement with the company, and therefore is not entitled to maintain this action. Assuming that the law of estoppel applies to such a situation, we have carefully reviewed the evidence in this case, and are satisfied that, under the evidence, the question of whether or not she was estopped was a question for the jury. Although defendant insists, in argument, that the evidence on this question is undisputed, we cannot agree with counsel on this question, and hold that the defendant company had the advantage of having the question of estoppel properly submitted to the jury, and that, the jury having found for the plaintiff, defendant cannot further complain.

The benefit certificate in question herein, under its terms, and under the by-laws of the society, was what might be termed a self-forfeiting certificate: that is to say, the payments made by the deceased to this company consisted of monthly assessments or dues payable on the last day of each month; and it is

conceded in the case that no payment was made on the last day of August, September, or October of 1921, by the deceased or by anyone for him.

Under the terms of the by-laws of this association, a failure to make these payments promptly by the time specified, makes the policy void; and this court is committed to the doctrine that, when such are the terms of the contract, they are valid and binding, and if any certificate holder fails to make those payments by the time specified, the certificate becomes void thenceforward, without any declaration or affirmative act on the part of the company. *Munger v. Brotherhood of Am. Yeomen,* 176 Iowa 291; *Brown v. Grand Council N. W. Legion of Honor,* 81 Iowa 400; *Fee v. National Masonic Acc. Assn.,* 110 Iowa 271; *Bosworth v. Western Mut. Aid Soc.,* 75 Iowa 582; *Mandego v. Centennial Mut. Life Assn.,* 64 Iowa 134; *Servoss v. Western Mut. Aid Soc.,* 67 Iowa 86; *Leffingwell v. Grand Lodge A. O. of U. W.,* 86 Iowa 279; *Carpenter v. Centennial Mut. Life Assn.,* 68 Iowa 453.

It is urged by the defendant company that, regardless of the other matters involved herein, this certificate, from the last day of August, 1921, under the by-laws of defendant and this certificate, was absolutely void, because these monthly payments were not made.

This court and other courts have held in several cases that the physical or mental disability of the deceased is no excuse for not making the payments promptly, as provided in the benefit certificate, and that, even though the deceased was insane and confined in a hospital, yet, if the payments were not made, under one of these self-forfeiting certificates the failure to make such payment would make the certificate *ipso facto* void, in accordance with the certificate and by-laws. *Thompson v. Knickerbocker Life Ins. Co.,* 104 U. S. 252 (26 L. Ed. 765); *Carpenter v. Centennial Mut. Life Assn.,* 68 Iowa 453; *Hawkshaw v. Supreme Lodge of Knights of Honor,* 29 Fed. 770; *Pitts v. Hartford L. & Ann. Ins. Co.,* 66 Conn. 376 (34 Atl. 95); *Sheridan v. Modern Woodmen,* 44 Wash. 230 (87 Pac. 127); *Smith v. Sovereign Camp W. O. W.,* 179 Mo. 119 (77 S. W. 862); *Kilgore v. Loyal Prot. Assn.,* 78 N. H. 498 (102 Atl. 344); *Wheeler v. Connecticut Mut. L. Ins. Co.,* 82 N. Y. 543; *Yoe v. Howard Mas.*

*Mut. Benev. Assn.*, 63 Md. 86; *Scheiber v. Protected Home Circle*, 146 Ill. App. 574; *New York L. Ins. Co. v. Alexander*, 122 Miss. 813 (85 So. 93).

There are some cases that go to the extent of holding that, by reason of the refusal of the company to receive the payments, the holder is excused from making such payments; and that, under such circumstances, even under a self-forfeiting certificate, the certificate will not be held by the court to be forfeited. But there is nothing to show any illegal act on the part of the company here; and all the company did, seems to have been done in good faith on their part, without any knowledge of the mental condition of the deceased; and we can find no excuse which the law recognizes for the failure to make these monthly payments in accordance with the terms of the contract. This being the law of this state, hard as it may be, it should be enforced; and it is, therefore, held that the failure to make the monthly payments, as provided, lapsed the certificate, and plaintiff is not entitled to recover thereon. We do not hesitate as much on this proposition as we ordinarily would, because of the fact that plaintiff herein admittedly was present when the settlement was made, and, while probably not in the room at the identical time that the papers were signed, she knew what was going on, and she knew the mental condition of the deceased as well at that time as she did later; and she was in a position to know that deceased was of unsound mind and incapable of transacting business. She failed to advise the company's representative of such fact, but assented to the settlement as made, and acquiesced therein. Knowing of these facts, she made no offer or tender to the company of the monthly payments as they became due, and let the matter rest until after his death, and then brought this action. See *Franklin Life Ins. Co. v. Morrell*, 84 Ark. 511 (106 S. W. 680).—*Reversed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.